# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | |
|---|---|
| **ANTHONY ISAAC WILLIAMS, SR.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Civil Action No. 5:10-01193** |
| | ) |
| **D.J. HARMON,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

### PROPOSED FINDINGS AND RECOMMENDATION

On October 7, 2010, Plaintiff, acting *pro se* and incarcerated at FCI Beckley in Beckley, West Virginia, filed his Complaint claiming entitlement to relief pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 395-97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[1] (Document No. 1.) In his Complaint, Plaintiff names the following as Defendants: (1) D.J. Harmon, Acting Warden; (2) Mr. Thompson, Health Services Administrator; (3) Ms. Thorne, Medical Assistant; (4) Mr. Cullop, Nurse; (5) Mr. Deal, Officer; and (6) Mr. Cowger, Officer. Plaintiff complains that Defendants violated his constitutional rights by negligently giving him a tetanus vaccination shot instead of a T.B. test shot. (Id., pp. 4 - 9.) Plaintiff explains that "[o]n July 14, 2010, at or about 10:30 a.m. - 11:30 a.m., Medical Assistant, Ms. Thorne, told me she had to give me a T.B. test shot." (Id., p. 4.) Plaintiff states that "[a]s soon as she gave me the shot, my arm swelled up and started burning and itching and hurting very badly." (Id.) Plaintiff alleges that "[a]t 5:00 p.m. on July 14, 2010, Nurse Cullop told me that I was given the wrong shot." (Id.) Plaintiff

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

was informed that he was give a tetanus vaccination shot, instead of the T.B. test shot. (Id., pp. 4 - 5.) Plaintiff was told to report to Health Services on the morning of July 15, 2010, where he was evaluated by Ms. Thorne, Mr. Cullop, and Mr. Walker. (Id., p. 5.) Plaintiff states that he informed staff that his arm hurt and was itching "pretty bad." (Id.) Although Plaintiff informed medical staff that he did not have T.B., Mr. Walker informed Plaintiff that "we will have to give you the right shot next week." (Id.) Plaintiff alleges that he is "O.C.D. and I have a phobia of germs and syringes." (Id.) Plaintiff states that he was "mentally stressed" by the foregoing. (Id., p. 6.) Plaintiff asserts that Officer Cowger refused to let Plaintiff see Dr. Martin, the psychologist, until the next week. (Id.) Plaintiff contends that he tested negative for T.B. on July 21, 2010. (Id., p. 9.) Plaintiff asserts that due to Defendants' negligence, he has "suffered mental anguish and severe permanent emotional distress as well as personal damages." (Id., p. 8.) Accordingly, Plaintiff requests the following relief: (1) "to be transferred to FMC Rochester, Minnesota," (2) "to be rewarded 5 million dollars;" and (3) "a time cut (reduce sentencing)." (Id., p. 9.)

As Exhibits, Plaintiff files the following: (1) A copy of Plaintiff's "Medical Treatment Refusal" dated April 13, 2010 (Document No. 6, p. 4.); (2) A copy of Plaintiff's "Inmate Request to Staff" dated August 18, 2010 (Document No. 1, p. 18 and Document No. 6, p. 5.); (3) A copy of a "Receipt - Administrative Remedy" dated August 18, 2010, from the Administrative Remedy Coordinator at FCI Beckley (Remedy ID 603155-F1) (Document No. 1, p. 16.); (4) A copy of a "Extension of Time for Response" dated August 30, 2010, from the Administrative Remedy Coordinator at FCI Beckley (Remedy ID 603155-F1) (Id., p. 17.); (5) A copy of Warden Harmon's Response dated October 1, 2010 (Remedy ID 603155-F1) (Document No. 3.); (6) A copy of Plaintiff's "Inmate Request to Staff" dated October 10, 2010 (Document No. 6, p. 3.); (7) A copy of Plaintiff's "Request for Administrative Remedy" dated November 3, 2010 (Remedy ID 603917-

F1) (Document No. 4, pp. 1 - 2.); (8) A copy of Plaintiff's "Request for Administrative Remedy Informal Resolution Form" dated November 5, 2010 (Document No. 4, pp. 4 - 5.); (9) A copy of Plaintiff's "Request for Administrative Remedy Informal Resolution Form" dated November 6, 2010 (Document No. 7, p. 3.); (10) A copy of Plaintiff's "Inmate Request to Staff" dated November 29, 2010 (Document No. 4, p. 3.) (11) A copy of Plaintiff's "Request for Administrative Remedy Informal Resolution Form" dated November 30, 2010 (Document No. 6, p. 2.); (12) A copy of Plaintiff's "Request for Administrative Remedy" dated December 1, 2010 (Remedy ID 617539-F1) (Document No. 7, p. 4.); (13) A copy of the "Rejection Notice" dated December 6, 2010, from the Administrative Remedy Coordinators FCI Beckley (Remedy ID 617539-F1) (Id., p. 2.); (14) A copy of Plaintiff's "Regional Administrative Remedy Appeal" dated December 8, 2010 (Remedy ID 617539-R2) (Id. p. 5.); (15) A copy of Plaintiff's "Inmate Request to Staff" dated December 29, 2010 (Document No. 6, p. 1.); (16) A copy of the "Extension of Time for Response - Administrative Remedy" dated January 9, 2011, from the Administrative Remedy Coordinator at the Mid-Atlantic Regional Office (Remedy ID 616694-R1) (Document No. 5, p. 2.); (17) A copy of a "Rejection Notice" dated February 16, 2011, from the Administrative Remedy Coordinator Mid-Atlantic Regional Office (Remedy ID 617539-R2) (Document No. 7, p. 1.); and (18) A copy of Plaintiff's medical records (Document No. 6, pp. 6 - 9.).

## STANDARD

Pursuant to 28 U.S.C. § 1915A, the Court is required to screen each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct.

1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831 - 32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490 U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id., 490 U.S. at 327 - 328, 109 S.Ct. at 1833. A complaint therefore fails to state a claim upon which relief can be granted factually when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. With these standards in mind, the Court will assess Plaintiff's allegations in view of applicable law.[2]

## DISCUSSION

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. at 395-97, 91 S.Ct. at 2004-05; See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims); Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending Bivens to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A Bivens action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between

---

[2] Plaintiff appears to be a frequent filer having initiated five civil actions with this Court: (1) *Williams v. Berkebile*, Civil Action No. 5:10-0962; (2) *Williams v. Harmon, et al.*, Civil Action No. 5:10-1135; (3) *Williams v. Harmon, et al.*, Civil Action No. 5:10-1193; (4) *Williams v. Ziegler*, Civil Action No. 5:10-1413; and (5) *Williams v. Ziegler*, 5:12-0398.

the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under <u>Bivens</u> must show the violation of a valid constitutional right by a person acting under color of federal law.[3] The United States Supreme Court has held that an inmate may name a federal officer in an individual capacity as a defendant in alleging an Eighth Amendment constitutional violation pursuant to <u>Bivens</u>. <u>See</u> <u>Wilson v. Seiter</u>, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However, <u>Bivens</u> claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. <u>See</u> <u>FDIC v. Meyer</u>, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); <u>Berger v. Pierce</u>, 933 F.2d 393, 397 (6th Cir. 1991); <u>Reinbold v. Evers</u>, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

1.      **Exhaustion of Administrative Remedies.**

        The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may

---

[3] Inmates may file claims of liability against the United States under the FTCA but may not assert claims of personal liability against prison officials for violations of their constitutional rights. *Carlson v. Green*, 446 U.S. at 21-23, 100 S.Ct. at 1472 -74. By contrast, under *Bivens* inmates may assert claims of personal liability against individual prison officials for violations of their constitutional rights but may not assert claims against the government or prison officials in their official capacities. The Supreme Court held in *Carlson*, 446 U.S. at 18 - 21, 100 S.Ct. at 1471-72, that an inmate could pursue a *Bivens* action independent of a FTCA action. The Court found that Congress did not intend to pre-empt a *Bivens* remedy when it enacted the FTCA. *Id.* The Court noted that the legislative history of the FTCA "made it crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action." *Id.*, 446 U.S. at 19 - 20, 100 S.Ct. at 1471 -72. Relying upon *Carlson*, the Fourth Circuit found that the availability of relief under the FTCA does not automatically foreclose a *Bivens* action. *Dunbar Corp v. Lindsey*, 905 F.2d 754, 762 (4th Cir. 1990). The Court pointed out other distinctions between FTCA and *Bivens* actions in *Dunbar Corp.*: (1) only compensatory damages are available in FTCA actions, whereas compensatory and punitive damages are available under *Bivens* and (2) FTCA claims must be tried to the Court, whereas *Bivens* claims may be tried to a jury. *Id.*

5

not afford them the relief they might obtain through civil proceedings.[4] Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), aff'd, 54 Fed.Appx. 159 (4th Cir. 2003), cert. denied, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[T]here is no futility exception to the PLRA's exhaustion requirement." Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms

---

[4] 42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, <u>Bivens</u> or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See <u>Jones v. Bock</u>, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See <u>Neal v. Goord</u>, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in <u>Neal</u>, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. <u>Neal</u>, 267 F.3d at 123. In <u>Freeman v. Francis</u>, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See <u>Jones v. Bock</u>, <u>supra</u>; <u>Anderson v. XYZ</u>

Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. See Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. The Fourth Circuit stated in Anderson, 470 F.3d at 683, as follows:

> [A]n inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies.

For Bivens purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d at 655 (internal citations omitted); also see Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, et seq., through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints

informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

In his Complaint, Plaintiff acknowledges that he did not fully exhaust his administrative remedies.  (Document No. 1, p. 3.) Concerning his attempts to exhaust, Plaintiff merely states that

he "wrote a BP-10 sensitive issue to Mid-Atlantic Regional Office." (Id.) A review of the record reveals that Plaintiff filed the instant action approximately nine days after receiving the Warden's Response denying his Administrative Remedy Request. (Document No. 3.) Clearly, Plaintiff did not exhaust his administrative remedies pursuant to the PLRA. Based on the foregoing, the undersigned recommends that Plaintiff's Complaint be dismissed in view of his failure to exhaust the administrative remedies provided under the BOP's Administrative Remedy Program, 28 C.F.R. § 542.10, et seq., prior to filing his Complaint. Notwithstanding Plaintiff's failure to exhaust, the undersigned will briefly consider the merits of his claim.

**2.      No Eighth Amendment Violation.**

Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). See also Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994)(Supreme Court noted that Eighth Amendment imposes certain duties upon prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"), quoting Hudson v. Palmer, 468 U.S. 517, 526 - 27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)); Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)(Court held that only those conditions depriving inmates of "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation). Sentenced prisoners are therefore constitutionally guaranteed adequate medical care under the Eighth Amendment.

To establish a violation of the Eighth Amendment in the context of a challenge to conditions

of confinement, an inmate must allege and prove (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. <u>Wilson v. Seiter</u>, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities.'" <u>Id.</u> at 298, 111 S.Ct. 2321 (<u>citing</u> <u>Rhodes v. Chapman</u>, 452 U.S. at 347, 101 S.Ct. 2392)."In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements – that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" <u>Shakka v. Smith</u>, 71 F.3d 162, 166 (4th Cir. 1995)(<u>quoting</u> <u>Strickler v. Waters</u>, 989 F.2d 1375, 1379 (4th Cir. 1993)(quotation omitted)). <u>See also</u> <u>White v. Gregory</u>, 1 F.3d 267, 269 (4th Cir. 1991)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") A medical need serious enough to give rise to an Eighth Amendment claim involves a condition which places an inmate at substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment causes continuous severe pain. The Fourth Circuit stated the applicable standard in <u>Miltier v. Beorn</u>, 896 F.2d 848, 851 - 852 (4th Cir. 1990), as follows:

> To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness. * * * Deliberate indifference may be demonstrated by either actual intent or reckless disregard. * * * A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. * * * Nevertheless, mere negligence or malpractice does not violate the eighth amendment. (Citations omitted)

<u>See also</u> <u>Sosebee v. Murphy</u>, 797 F.2d 179, 183 (4th Cir. 1986)(Facts indicating that guards were

aware that inmate's condition had worsened and was life-threatening and intentionally ignored the situation and refused to seek medical assistance provided a reasonable basis for finding deliberate indifference to inmate's medical needs.); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978), cert. denied, 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980)(Pretrial detainee's allegations of delay in treatment of his broken arm indicated a reasonable basis for inferring deliberate indifference to his serious medical needs.); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975)(Summary judgment for defendants affirmed where claim that inmate received constitutionally inadequate medical treatment involved a question of medical judgment not subject to judicial review.) Therefore, Plaintiff must first allege and eventually establish a "sufficiently serious" deprivation of adequate medical care and resulting "serious or significant physical or mental injury" in order to maintain and prevail upon his Eighth Amendment claim. Second, to establish the subjective component of deliberate indifference, Plaintiff must allege and prove each defendant's consciousness of the risk of harm to him. See Farmer, *supra*, 511 U.S. at 840, 114 S.Ct. at 1980. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, *supra*, 511 U.S. at 837, 114 S.Ct. at 1979. Plaintiff in this case must therefore allege and establish that each Defendant was aware that he was receiving constitutionally inadequate medical care and disregarded the serious physical consequences.

The allegations contained in Plaintiff's Complaint do not present a claim of constitutional magnitude. The undersigned finds that Plaintiff's allegation that Defendants acted with deliberate indifference by mistakenly giving him a tetanus vaccination shot, instead of the T.B. test shot, is

insufficient to state a claim under the Eighth Amendment. An assertion of mere negligent conduct or malpractice is not enough to constitute an Eighth Amendment violation. See Daniels v. Williams, 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986); Miltier v. Beorn, 896 F.2d 848, 852 (4th Cir. 1990). Although inmates are clearly entitled to reasonable medical care, an inmate must allege acts or omissions "sufficiently harmful to evidence deliberate indifference to serious medical needs" to establish a claim under the Eighth Amendment. Estelle, 429 U.S. at 105, 97 S.Ct. at 286. The undersigned first finds that under an objective standard, Plaintiff fails to allege a "sufficiently serious" deprivation of medical care resulting in a "serious or significant physical or mental injury." Plaintiff does not allege that he was at risk of death or permanent disability, or suffered continuous severe pain due to the tetanus vaccination shot. Second, Plaintiff fails to allege facts sufficient to satisfy the subjective component of deliberate indifference. To satisfy the subjective component, Plaintiff must allege each Defendant's consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. Plaintiff, however, fails to allege that Defendants knew of and disregarded an excessive risk to his health or safety. Plaintiff merely claims that "giving me the wrong shot was negligence." Plaintiff does not allege that Defendants knew they incorrectly had the tetanus vaccination and knowingly gave Plaintiff the incorrect shot. In fact, Plaintiff acknowledges throughout his Complaint that the tetanus vaccination was administered due to negligence. It is well recognized that a "negligent medical diagnoses or treatment, without more, do not constitute deliberate indifference." Webb v. Hamidullah, 281 Fed.Appx. 159, 166 (4th Cir. 2008); King v. United States, 2013 WL 3929086 (4th Cir. 2013)(prison dental staff's failure to take common-sense steps before performing dental work on prisoner did not rise to level of deliberate indifference); also see Sosebee v. Murphy, 797 F.2d 179, 181 (4th Cir. 1986)("[A] complaint that a physician has been

negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); <u>Soto v. Arpaio</u>, 2007 WL 2220511, * 6 (D.Ariz. Aug. 2, 2007)("[E]ven assuming, arguendo, Plaintiff's allegations as true that Defendant filled the wrong tooth, at most, [Defendant's] actions were negligence."); <u>Gindraw v. Dendler</u>, 967 F.Supp. 833, 836-38 (E.D.Penn. July 3, 1997)(finding allegation that defendant extracted wrong tooth failed to establish a claim of deliberate indifference). Accordingly, the undersigned finds that Plaintiff's allegations cannot be construed to implicate a constitutional right for the violation of which relief can be granted under <u>Bivens</u>. Plaintiff's Complaint must therefore be dismissed.

### PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DISMISS** Plaintiff's Complaint (Document Nos. 1 and 3.) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo*

review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.

<u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985);

<u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94

(4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Berger

and this Magistrate Judge.

　　　　The Clerk is requested to send a copy of this Proposed Findings and Recommendation to

Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

　　　　Date: October 24, 2013.

R. Clarke VanDervort
United States Magistrate Judge